**Opinion issued May 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-00807-CV

————————————

**KAAREN CAMBIO AND CALIFORNIA PIPE RECYCLING, INC.,**
**Appellants**

**V.**

**JOE BRIERS, SOUTHWEST PIPE SERVICES, INC., AND S.W. PIPE**
**HOLDINGS, INC., Appellees**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 41741**

---

## MEMORANDUM OPINION

California Pipe Recycling, Inc. (CPR) appeals a judgment entered on a

jury's verdict in favor of Joe Briers (Briers), S.W. Pipe Holdings, Inc., and

Southwest Pipe Services, Inc.[1] (SWP, and collectively with Briers, appellees) on appellees' breach of contract claims. CPR raises the following two issues on appeal: (1) the trial court erred when it refused to disregard the jury's findings with regard to Jury Questions 11, 12 and 13, and (2) the trial court erred when it refused to enter judgment in favor of CPR and award CPR its attorney's fees. We reverse the portions of the judgment awarding Briers $15,250 in damages (Jury Question 12) and SWP $45,000 in attorney's fees (Jury Question 13) and render judgment that Briers and SWP take nothing on these claims. As the prevailing party with respect to the breach of contract claims involving the Consent Agreement, we reverse the trial court's judgment and remand for a new trial on the issue of CPR's attorney's fees.

## Background

Kaaren Cambio was hired as a marketing specialist for Briers Pipe, a company that bought pipe from old oil and gas lines that had been discarded or were no longer serviceable, refurbished the pipe, and then resold it on a secondary market to various companies. After a falling out with the other owners of Briers Pipe, Joe Briers formed a new company in 2003 that also salvaged old pipe and resold it on a secondary market—SWP. SWP used a proprietary conveyor system

---

[1] Because the parties did not make a distinction between the two companies at trial or for purposes of the verdict, neither do we.

that Briers developed to strip the old coating off the pipe, including any asbestos or other carcinogens. Cambio left Briers Pipe and joined Briers at SWP.

In 2005, Cambio introduced Briers to Hal Blackburn and Bruce Haupt, the owners of a California trucking company that also bought and sold reclaimed structural steel and pipe to the public. In May 2006, Briers, Cambio, Blackburn, and Haupt formed a new pipe recycling business, CPR, with each partner having a twenty-five percent share of the company. Briers went to California later that year and installed the conveyors and the rest of the cleaning system at the CPR facility. According to Blackburn, CPR had a lot of problems with the system and, although Briers was Vice President of CPR and had a twenty-five percent stake in the company, he eventually stopped servicing the conveyor system and stopped returning Blackburn's phone calls.

In January 2007, Cambio and Briers had a falling out over whether Cambio was a co-owner of SWP, or merely an employee. Briers, who claimed that Cambio was an employee, promptly terminated her employment with the company.

The following month Cambio sued Briers and SWP (the Cambio Litigation) alleging that appellees breached the agreement regarding her ownership in SWP and other causes of action. Briers counter claimed against Cambio. When the Cambio Litigation was filed, Cambio was the President of CPR and Briers was the Vice President. CPR was aware of the Cambio Litigation and did not want to be

3

brought into it. CPR was also aware of and concerned about Briers's refusal to communicate with the company's other shareholders.

In order to resolve the situation, CPR decided to negotiate for Briers's resignation from CPR and for a buyout of his shares. As a result of these negotiations, the parties executed a Consent Agreement in March 2007. The parties stipulated at trial that the Consent Agreement is comprised of several transactional documents including a consent to action by a majority of CPR's directors and shareholders, two bills of sale, a promissory note, a waiver of costs and rent, and a mutual general release. Among the many obligations required under the terms of the Consent Agreement, SWP was required to sell the conveyor system to CPR (the Promissory Note), and CPR was required to transfer title to $15,250 worth of pipe located at CPR's facility to Briers and to maintain the pipe in its yard, rent free, for up to one year after the Consent Agreement was signed (Bill of Sale). The parties also agreed to release each other from any known or unknown claims they had against one another and appellees agreed not to bring CPR into the Cambio Litigation (Mutual General Release).

Despite the promises secured by the Consent Agreement, including the promise not to bring CPR into the Cambio Litigation, Briers and SWP filed a third-party petition against CPR in December 2007. Beginning in January 2008, Briers began to make demands for access to the pipe at CPR's facility under the

4

Bill of Sale part of the Consent Agreement. CPR filed an answer and, among other things, asserted a counterclaim against Briers for breach of contract based on Briers's filing of the third-party petition against CPR in the underlying suit, contrary to the Consent Agreement.

After a trial on the merits, the jury found that both CPR and SWP materially breached the Consent Agreement (Jury Questions 8 and 9), but CPR breached it first (Jury Question 10). The jury also found that CPR's failure to comply with the terms of the agreement was not excused (Jury Question 11) and it awarded SWP $15,250 in damages (Jury Question 12) and $45,000 in attorney's fees (Jury Question 13).

CPR filed a motion for JNOV challenging the jury's verdict. SWP argued that CPR breached the Consent Agreement first because CPR made late payments on the conveyor system that preceded the filing of the third-party petition. The trial court granted the motion, in part, and, after concluding that the late payments did not constitute a material breach of the contract, the court disregarded the jury's finding that CPR breached first and found instead that SWP committed the first material breach of the Consent Agreement (Jury Question 10). The trial court,

5

however, refused to disregard the jury's finding that CPR's breach was not excused (Jury Question 11) or the jury's award of attorney's fees (Jury Question 13).[2]

## Discussion

On appeal, CPR contends that the trial court erred when it (1) refused to disregard the jury's findings with regard to Jury Questions 11, 12 and 13, and (2) refused to enter judgment in favor of CPR on the breach of contract claim relating to the Consent Agreement and award CPR its attorney's fees.

## A. Standard of Review and Applicable Law

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury's findings on issues necessary to liability or if a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). A trial court may disregard a jury finding and enter a JNOV if the finding is immaterial or if there is no evidence to support the finding. *Tiller*, 121 S.W.3d at 713; *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). A question is "immaterial" when it should not have been submitted to the jury, it calls for a finding beyond the province of the jury, such as a question of

---

[2] The trial court sent a letter to the parties ruling on the motion for JNOV prior to entry of the final judgment. The letter does not state that it is intended to set forth the trial court's findings of fact and conclusions of law on the matters presented in the motion for JNOV. Moreover, neither party requested findings of fact and conclusions of law, and neither argues on appeal that the letter ruling should be treated as findings of fact and conclusions of law. We, therefore, do not treat the letter as such for purposes of this appeal. *See generally Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195 (Tex. App.—Texarkana 2010, pet. denied).

law, or when it was properly submitted but has been rendered immaterial by other findings. *See Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *Spencer*, 876 S.W.2d at 157. It is well settled that when jury questions are conditioned upon an affirmative answer to a prior question, a negative answer to the preceding question renders all subsequent findings either improper, immaterial, or devoid of legal significance. *Am. Recreational Mkts. Gen. Agency, Inc. v. Hawkins*, 846 S.W.2d 476, 478 (Tex. App.—Houston [14th Dist.] 1993, no writ) (citing *Alpine Tel. v. McCall*, 143 Tex. 335, 184 S.W.2d 830, 834 (1945)).

We review the trial court's ruling on a motion for JNOV under a legal sufficiency standard, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller*, 168 S.W.3d at 822. A JNOV or directed verdict is also proper when a legal principle precludes recovery. *See JSC Neftegas–Impex v. Citibank, N.A.*, 365 S.W.3d 387, 396 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied). To the extent that such a ruling is based on a question of law,

we review that aspect of the ruling de novo. *See JSC Neftegas–Impex*, 365 S.W.3d at 396; *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review.").

**B.     Jury Questions 11, 12, and 13**

CPR argues on appeal that the trial court erred when it refused to disregard the jury's answer to Jury Question 11 (whether CPR's breach was excused) because CPR's breach was excused as a matter of law, and that the trial court erred when it refused to disregard the jury's answers to Jury Questions 12 and 13 because those questions were predicated upon a finding that CPR breached the Consent Agreement first (Jury Question 10) and a finding that CPR's breach was not excused (Jury Question 11).

Here, the jury was instructed to answer Jury Question 11 only if it first found that CPR was the first party to breach the Consent Agreement in response to Jury Question 10. ("If your answer to Question 10 is 'California Pipe Recycling,' then answer the following question. Otherwise, do not answer the following question.") Similarly, the jury was instructed to answer Jury Question 12 only if it first found that CPR's breach was unexcused in response to Jury Question 11. ("If your answer to Question 11 is 'No,' then answer the following question. Otherwise, do not answer the following question.") The predicate to Jury Question 13 stated: "If your answer to Question 10 is 'California Pipe Recycling,' and your answer to

8

Question 11 is 'No,' then answer the following question. Otherwise, do not answer the following question." Thus, the jury was instructed that it could only award attorney's fees to SWP for breach of contract (Jury Question 13), if it first determined that CPR breached the Consent Agreement first (Jury Question 10) and that CPR's breach was not excused (Jury Question 11).

Jury Questions 11, 12, and 13 are all predicated, at least in part, on a finding that CPR breached the Consent Agreement first (Jury Question 10). The trial court entered a JNOV which disregarded the jury's finding that CPR breached first. Although appellees challenge the trial court's granting of the motion for JNOV with respect to Jury Question 10, appellees did not file a notice of appeal in this case, and therefore, we cannot consider their appellate complaint. *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. . . . The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.") In light of the court's ruling, the predicate to Jury Question 11 was not satisfied and the jury should never have reached Jury Question 11. Therefore, Jury Question 11 was immaterial and the trial court erred in refusing to disregard the jury's finding on this issue. *See Am. Recreational Mkts. Gen. Agency*, 846 S.W.2d at 478 (stating that answers to jury questions are immaterial if the predicate for question is not satisfied); *see also Se. Pipe Line Co.*,

9

997 S.W.2d at 172; *Spencer*, 876 S.W.2d at 157. Similarly, Jury Question 12, which was predicated on a finding that CPR's breach was unexcused in response to Jury Question 11, and Jury Question 13, which was predicated on findings that CPR breached the Consent Agreement first and that CPR's failure to comply with the Consent Agreement was unexcused in response to Jury Questions 10 and 11, were also rendered immaterial by the court's ruling. Therefore, the trial court also erred in refusing to disregard the jury's answers to these questions. *See Am. Recreational Mkts. Gen. Agency*, 846 S.W.2d at 478; *see also Se. Pipe Line Co.*, 997 S.W.2d at 172; *Spencer*, 876 S.W.2d at 157. Accordingly, we reverse the portions of the judgment awarding SWP $15,250 in damages (Jury Question 12) and $45,000 in attorney's fees (Jury Question 13) and render judgment that appellees take nothing on these claims.

We sustain CPR's first issue.

## C.    CPR's Attorney's Fees

In its second issue, CPR contends that the trial court erred when it refused to enter judgment in favor of CPR and award CPR attorney's fees as the prevailing party in the litigation on SWP's breach of contract claim. On appeal, CPR asks this court to either render judgment for CPR in the amount of $50,000 for its attorney's fees or remand the case to the trial court for a new trial on the issue of CPR's attorney's fees.

10

Appellees argue that CPR is not entitled to attorney's fees in the breach of contract action because CPR did not present any evidence that it incurred damages as a result of the breach. Appellees further contend that CPR did not meet its burden on the issue of attorney's fees because it failed to present evidence that the fees were reasonable and necessary.

The term "prevailing party" refers to the party who successfully prosecutes the action or successfully defends against the action on the main issue. *Weng Enters., Inc. v. Embassy World Travel, Inc.*, 837 S.W.2d 217, 222–23 (Tex. App.—Houston [1st Dist.] 1992, no writ). Although a plaintiff who receives a finding of liability but no damages is not a prevailing party for the purposes of attorney's fees, *see Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009), a defendant who successfully defends against a breach of contract claim may be entitled to attorney's fees, even if the defendant is not awarded damages. *See Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01–07–00370–CV, 2010 WL 2025749, at *18 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.) (holding defendant was prevailing party when court entered take-nothing judgment in his favor on breach of contract claim and affirming award of attorney's fees); *Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.) (awarding defendant attorney's fees for successfully defending breach of contract action with "prevailing party" attorney's fee provision); *Weng*

11

*Enters.*, 837 S.W.2d at 222–23 (same); *see also Epps v. Fowler*, 351 S.W.3d 862, 868–69 (Tex. 2011) (holding that defendant is prevailing party for purposes of award of attorney's fees when plaintiff nonsuits case with prejudice).

Here, the Consent Agreement entitles the prevailing party in a suit to enforce its terms to the party's attorney's fees. Specifically, paragraph 3 of the Mutual General Release provides:

> In the event any action, suit or other proceedings is instituted to remedy, prevent or obtain relief from a breach of this Agreement . . . the prevailing party shall recover its reasonable attorneys' fees in each and any such action, suit or other proceeding, including any and all petitions and appeals associated with the same.

When the parties validly contract for recovery of attorney's fees, courts must enforce the plain language of the contract. *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967). Having successfully defended against appellees' breach of contract claim based upon the Consent Agreement, CPR is entitled to attorney's fees under the plain language of the Consent Agreement. *See Silver Lion*, 2010 WL 2025749, at *18; *Robbins*, 100 S.W.3d at 27; *Weng Enters.*, 837 S.W.2d at 822–23.

Ordinarily, the reasonableness of the amount of attorney's fees is left to the factfinder, and a reviewing court may not substitute its judgment for the jury's. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per

curiam)); *see also Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (noting that reasonableness and necessity of attorney's fees are "question[s] of fact for the jury's determination"). However, when counsel's testimony regarding his fees is uncontroverted, clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise, an appellate court may exercise its discretion and render judgment for attorney's fees in the interest of judicial economy. *See Ragsdale*, 801 S.W.2d at 882; *see also World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 684, 686 (Tex. App.—Fort Worth 1998, pet. denied) (citing *Ragsdale* and rendering judgment in attorney's fees in breach-of-contract case). Because the jury and trial court erroneously concluded that SWP—not CPR—was the prevailing party, neither factfinder has had an opportunity to consider the reasonableness and necessity of CPR's requested attorney's fees of $50,000 in this case. *See generally Bocquet*, 972 S.W.2d at 21 (noting that reasonableness and necessity of attorney's fees are "question[s] of fact for the jury's determination"). Although this court has exercised its discretion and rendered judgment awarding attorney's fees in other cases, we decline to do so here. *Cf. Goudeau v. Marquez*, 830 S.W.2d 681, 683–84 (Tex. App.—Houston [1st Dist.] 1992, no writ) (reforming trial court's judgment to include award of $790 in attorney's fees and affirming judgment as reformed).

13

Accordingly, we hold that, as the prevailing party, CPR is entitled to attorney's fees under the plain language of the Consent Agreement, and we remand for a new trial on this issue. *See Smith*, 296 S.W.3d at 548–49.

We sustain CPR's second issue.

## Conclusion

We reverse the portions of the judgment awarding SWP $15,250 in damages (Jury Question 12) and $45,000 in attorney's fees (Jury Question 13) and render judgment that SWP take nothing on these claims. Because CPR is entitled to its attorney's fees as the prevailing party on the breach of contract claim, we remand for a new trial on this issue.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.